ULYSSES S. GREEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Green v. Commissioner
Docket No. 13499-78.
United States Tax Court
T.C. Memo 1982-485; 1982 Tax Ct. Memo LEXIS 265; 44 T.C.M. (CCH) 923; T.C.M. (RIA) 82485; August 23, 1982. Ulysses S. Green, pro se. Allen F. Lang, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined deficiencies in petitioner's 1974 and 1975 Federal income tax of $2,111.76 and $19.23, respectively. The issues for decision are: (1) Whether petitioners is entitled to a claimed deduction for charitable contributions; (2) whether petitioner is entitled to a claimed deduction for casualty losses; (3) whether petitioner is entitled to a deduction for real estate taxes in excess of the amount allowed by respondent; (4) whether petitioner is entitled to a deduction for transportation expenses in excess of the amounts allowed by respondent; (5) whether petitioner is entitled to bad debt deductions for 1974 or 1975. FINDINGS OF FACT Some of the facts have *266 been stipulated and are found accordingly. Petitioner resided in Hammond, Indiana, at the time that he filed his petition in this case. Issues 1, 2, and 3: Charitable Contributions, Real Estate Taxes, and Transportation Expenses
On his 1974 income tax return, petitioner claimed charitable contributions to "combine appeals" in the amount of $2,500. In the notice of deficiency, respondent disallowed petitioner's claimed charitable contributions. During 1974, petitioner paid real estate taxes in the amount of $797.15. On his 1974 income tax return, petitioner claimed a deduction for real estate taxes in the amount of $1,140.78. In the notice of deficiency, respondent allowed petitioner a deduction for real estate taxes in the amount of $797.15. Petitioner claimed no transportation expenses on his 1974 and 1975 income tax returns. In the notice of deficiency, respondent determined that petitioner is entitled to deductions for transportation expenses incurred in driving from one work site to another work site in the same day, in the amounts of $1,914.75 and $138 for 1974 and 1975, respectively. Issue 4: Bad Debt Deductions
At trial petitioner claimed that he *267 was entitled to $21,800 in bad debt deductions for 1974. Of the $21,800 in alleged bad debts, petitioner maintains that $20,000 represents cash advances to John D. Thomas (hereinafter Thomas), the owner and manager of Brothers Unlimited Fish and Grocery Store, and that $1,800 represents a loan to Johnnie L. Slack (hereinafter Slack). [1] Petitioner did not claim any bad debt deductions on his 1974 return, but he did report on his 1975 return a $10,000 short term capital loss due to the alleged bad debt owed by Thomas. *268 In the notice of deficiency, respondent determined that petitioner is entitled to an $800 bad debt deduction which resulted from a loan in like amount to Slack. Respondent characterized the deduction as a nonbusiness bad debt, allowing petitioner a short term capital loss. Upon applying the limitations of section 1211, [2] respondent determined that $500 of such loss was allowable in 1974, and $300 of such loss was allowable in 1975. Respondent disallowed the bad debt deductions which petitioner claimed with respect to the alleged cash advances made to Thomas. Issue 5: Casualty Losses
On February 22, 1974, the roof and interior of petitioner's home sustained water damage due to a storm. Under the terms of petitioner's homeowner's policy, which was issued by the Vernon General Insurance Company nhereinafter VGIC), petitioner's insurance coverage included $18,000 for the dwelling and $9,000 for unscheduled personal property. Petitioner filed a claim with VGIC which paid him $1,645 for the storm damage to petitioner's personal property and the roof on petitioner's home. On his 1974 income *269 tax return, petitioner claimed a casualty loss in the amount of $5,029.35 for alleged storm damage to personal property within his home. In the notice of deficiency, respondent disallowed the claimed loss. On May 1, 1974, petitioner reported to the police the theft of a lawnmower from a storage shed located at 1017 Fields Street, Hammond, Indiana. [3] The lawnmower which petitioner reported stolen was owned by petitioner's brother. On his 1974 income tax return, petitioner claimed a casualty loss of $1,200 for the theft of the lawnmower. In the notice of deficiency, respondent disallowed the claimed loss. OPINION Issues 1, 2, and 3: Charitable Contributions, Real Estate Taxes, and Transportation Expenses
According to petitioner, he gave approximately $2,500 to an Islam Mosque during 1974.Petitioner, however, did not identify the location of the mosque or provide the Court with any other information about it. Moreover, petitioner testified that all of his "contributions" were in the form of cash and that he had no records or receipts to substantiate any contributions. Respondent disallowed *270 the claimed charitable contributions due to lack of substantiation. We agree with respondent. Petitioner's self-serving testimony consisted entirely of conclusory statements which we do not accept as fact. See , affg. , cert. denied . We hold that petitioner has failed to meet his burden of proof. ; Rule 142(a). [4]
At trial, petitioner offered no evidence that he paid real estate taxes in excess of the amount allowed by respondent. Consequently, we uphold respondent's determination. ; Rule 142(a). In the statutory notice, respondent determined that petitioner was entitled to transportation expenses of $1,914.75 and $138 for 1974 and 1975, respectively, for driving between job sites. At trial, petitioner claimed that he was entitled to a total transportation expense deduction of $3,000 for 1974. *271 With respect to 1975, petitioner contends that he is entitled to more than the $138 which respondent allowed, but petitioner has not specified the amount which he believes is correct. Petitioner admitted at trial that he kept no records or receipts with respect to his transportation expenses and his overall testimonys as to how he computed his transportation expenses was vague, confusing, and wholly inadequate to support any transportation expenses in excess of those allowed by respondent. Consequently, we uphold respondent's determination. Issue 4: Bad Debt Deductions
At trial petitioner argued that he had loaned $1,800 to Slack and that the debt became worthless during 1974. Petitioner, however, did not claim this alleged bad debt on his 1974 return. Respondent determined that petitioner had made an $800 loan to Slack and that the loan became worthless in 1974. Upon applying section 1211, respondent allowed petitioner a short term capital loss of $500 and $300 for 1974 and 1975, respectively. While we have found evidence in the record which indicates that petitioner loaned at least $800 to Slack, we have found nothing therein, other than petitioner's own self-serving *272 and vague testimony, which shows that the debt became worthless in either of the years currently before us. Nevertheless, since respondent has allowed petitioner an $800 bad debt deduction with respect to petitioner's loan to Slack, we simply reject petitioner's claim that he is entitled to a deduction in excess of that amount. Finally, we must consider whether petitioner is entitled to claim any bad debt deductions with respect to alleged cash advances made to Thomas. The record with respect to this issue is vague and conflicting. Petitioner testified that he advanced to Thomas a total of $20,000 in cash and in small amounts between December of 1973 and September of 1974. He further testified that he kept no written record of the exact dates or amounts of the advances, but that he "kept it all in my head." Notwithstanding petitioner's own testimony that he kept a mental record of the $20,000 that he allegedly advanced to Thomas, he only claimed a bad debt deduction of $10,000 on his 1975 return. At an Internal Revenue Service conference prior to the issuance of respondent's statutory notice, petitioner first raised the issue that he was also entitled to a $10,000 bad debt *273 deduction for 1974 with respect to advances made to Thomas. At trial, petitioner maintained that Thomas became insolvent in 1974, thus apparently conceding that he improperly claimed a bad debt deduction for 1975. [5]
In an attempt to corroborate his own testimony, petitioner had Thomas testify about the alleged advances. While Thomas acknowledged that petitioner advanced him $20,000, Thomas' testimony concerning the nature of the advances conflicted with petitioner's in significant respects. While petitioner testified that all of the advances were in the form of cash in small amounts commencing in 1973, Thomas testified that one-half of the advance was given by check in early 1974, and subsequent advances were made in cash with a final installment of $5,000 made in August of 1974. Given the conflicting testimony about the dates and amounts of petitioner's alleged advances to Thomas, we are not convinced that petitioner made any such advances to Thomas. Upon careful review of the record herein, we find petitioner's *274 and Thomas's testimony to lack credibility. Moreover, even if we were to find that petitioner did advance $20,000 to Thomas, the record becomes even more vague and conflicting as to whether or not the advances even represented a loan to Thomas. While petitioner introduced a document which indicated that he became a "special partner" in Thomas's fish and grocery business upon advancing him the first $10,000, Thomas testified that he considered petitioner to simply be a creditor and that he listed him as such when he filed for bankruptcy on October 9, 1980. Assuming for the moment that the advances constituted a debt owed by Thomas, the record does not even contain sufficient credible evidence to establish that the debt became worthless during the years in issue. While Thomas testified that he became insolvent on September 12, 1974, he also testified that he received $12,000 from the sale of the fish and grocery business in August or September of the same year. On that record, we conclude that petitioner has not met his burden or proof. Consequently, we uphold respondent's determination. Issue 5: Casualty Losses
On his 1974 return, petitioner claimed casualty losses of *275 $5,029.35 for storm damage to the roof of his home and personal property therein, and $1,200 for the theft of a lawnmower. Although petitioner's homeowner insurance policy provided petitioner with $18,000 of coverage for his dwelling and $9,000 of coverage for unscheduled personal property, the insurance company only gave him $1,645 for such loss. The lawnmower which was stolen belonged to petitioner's brother. Other than petitioner's bald assertion that he is entitled to these alleged casualty losses, there is nothing in the record which supports petitioner's claim that he sustained losses from a storm in excess of the amount of his insurance reimbursement. ; Rule 142(a). With respect to the stolen lawnmower, petitioner is not entitled to claim a casualty loss because he did not own it. . [6]
To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. On his 1974 Federal income tax return, petitioner did not claim any bad debt deductions. During a conference with the Internal Revenue Service (IRS), which preceded the respondent's statutory notice, petitioner first claimed that he was entitled to a $10,000 bad debt deduction for 1974, resulting from cash advances made to Thomas. With respect to the other $10,000 which petitioner maintains that he advanced to Thomas, petitioner originally claimed such amount as a bad debt deduction on his 1975 return. Based on petitioner's testimony discussed infra, however, it appears that petitioner's current position is that the entire $20,000 which he alleges was advanced to Thomas, should be claimed as a bad debt for 1974. See n. 5, infra.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
3. The record does not indicate who, if anyone, resided at this address.↩
4. Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.↩
5. It is difficult for us to know precisely all of petitioner's arguments because he has not favored the Court with a brief, and his testimony was less than clear.↩
6. See also .↩